611 A.2d 1043

**Christopher C. OWENS, Jr.**

v.

**STATE of Maryland.**

**No. 1292, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Sept. 3, 1992.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Logan C. Widdowson, State's Atty. for Somerset County, Princess Anne, on the brief), for appellee.

Submitted before WILNER, C.J., and MOYLAN and ALPERT, JJ.

MOYLAN, Judge.

This appeal presents us with a small gem of a problem from the borderland of legal sufficiency. It is one of those few occasions when some frequently invoked but rarely appropriate language is actually pertinent. Ironically, in this case it was not invoked. The language is, "[A] conviction upon circumstantial evidence *alone* is not to be sustained unless the circumstances are inconsistent with any reasonable hypothesis of innocence." *West v. State*, 312 Md. 197, 211–212, 539 A.2d 231 (1988) (emphasis in original); *Wilson v. State*, 319 Md. 530, 537, 573 A.2d 831 (1990); *Wiggins v. State*, 324 Md. 551, 565–566, 597 A.2d 1359 (1991).

We have here a conviction based upon circumstantial evidence alone. The circumstance is that a suspect was found behind the wheel of an automobile parked on a private driveway at night with the lights on and with the motor running. Although there are many far-fetched and speculative hypotheses that might be conjured up (but which require no affirmative elimination), there are only two unstrained and likely inferences that could reasonably arise. One is that the vehicle and its driver had arrived at the driveway from somewhere else. The other is that the driver had gotten into and started up the vehicle and was about to depart for somewhere else.

The first hypothesis, combined with the added factor that the likely driver was intoxicated, is consistent with guilt. The second hypothesis, because the law intervened before the forbidden deed could be done, is consistent with innocence. With either inference equally likely, a fact finder could not fairly draw the guilty inference and reject the innocent with the requisite certainty beyond a reasonable doubt. We are called upon, therefore, to examine the circumstantial predicate more closely and to ascertain whether there were any attendant and ancillary circum-

stances to render less likely, and therefore less reasonable, the hypothesis of innocence. Thereon hangs the decision.

The appellant, Christopher Columbus Owens, Jr., was convicted in the Circuit Court for Somerset County by Judge D. William Simpson, sitting without a jury, of driving while intoxicated. Upon this appeal, he raises the single contention that Judge Simpson was clearly erroneous in finding him guilty because the evidence was not legally sufficient to support such finding.

The evidence, to be sure, was meager. The State's only witness was Trooper Samuel Cottman, who testified that at approximately 11 P.M. on March 17, 1991, he drove to the area of Sackertown Road in Crisfield in response to a complaint that had been called in about a suspicious vehicle. He spotted a truck matching the description of the "suspicious vehicle." It was parked in the driveway of a private residence.

The truck's engine was running and its lights were on. The appellant was asleep in the driver's seat, with an open can of Budweiser clasped between his legs. Two more empty beer cans were inside the vehicle. As Trooper Cottman awakened him, the appellant appeared confused and did not know where he was. He stumbled out of the vehicle. There was a strong odor of alcohol on his breath. His face was flushed and his eyes were red. When asked to recite the alphabet, the appellant "mumbled through the letters, didn't state any of the letters clearly and failed to say them in the correct order." His speech generally was "slurred and very unclear." When taken into custody, the appellant was "very argumentative ... and uncooperative." A check with the Motor Vehicles Administration revealed, moreover, that the appellant had an alcohol restriction on his license. The appellant declined to submit to a blood test for alcohol.

After the brief direct examination of Trooper Cottman (consuming but 3½ pages of transcript), defense counsel asked only two questions, establishing that the driveway

was private property and that the vehicle was sitting on that private driveway. The appellant did not take the stand and no defense witnesses were called. The appellant's argument as to legal insufficiency is clever. He chooses to fight not over the fact of drunkenness but over the place of drunkenness. He points out that his conviction was under the Transportation Article, which is limited in its coverage to the driving of vehicles on "highways" and does not extend to driving on a "private road or driveway."

We agree with the appellant that he could not properly have been convicted for driving, no matter how intoxicated, back and forth along the short span of a private driveway. The theory of the State's case, however, rests upon the almost Newtonian principle that present stasis on the driveway implies earlier motion on the highway. The appellant was not convicted of drunken driving on the private driveway, but of drunken driving on the public highway before coming to rest on the private driveway.

It is a classic case of circumstantial evidence. From his presence behind the wheel of a vehicle on a private driveway with the lights on and the motor running, it can reasonably be inferred that such individual either 1) had just arrived by way of the public highway or 2) was just about to set forth upon the public highway. The binary nature of the probabilities—that a vehicular odyssey had just concluded or was just about to begin—is strengthened by the lack of evidence of any third reasonable explanation, such as the presence beside him of an inamorata or of a baseball game blaring forth on the car radio. Either he was coming or he was going.

The first inference would render the appellant guilty; the second would not. Mere presence behind the wheel with the lights on and the motor running could give rise to either inference, the guilty one and the innocent one. For the State to prevail, there has to be some other factor to enhance the likelihood of the first inference and to diminish the likelihood of the second. We must look for a tiebreaker.

The State had several opportunities to break the game wide open but failed to capitalize on either of them. As Trooper Cottman woke the appellant, he asked him what he was doing there. The appellant responded that *he had just driven* the occupant of the residence home. Without explanation, the appellant's objection to the answer was sustained. For purposes of the present analysis, therefore, it is not in the case. We must look for a tiebreaker elsewhere.

In trying to resolve whether the appellant 1) had just been driving or 2) was just about to drive, it would have been helpful to know whether the driveway in which he was found was that of his own residence or that of some other residence. If he were parked in someone else's driveway with the motor still running, it would be more likely that he had just driven there a short time before. If parked in his own driveway at home, on the other hand, the relative strength of the inbound inference over the outbound inference would diminish.

The driveway where the arrest took place was on Sackertown Road. The charging document (which, of course, is not evidence) listed the appellant's address as 112 Cove Second Street. When the appellant was arrested, presumably his driver's license was taken from him. Since one of the charges against the appellant was that of driving in violation of an alcohol restriction on his license, it would have been routine procedure to have offered the license, showing the restriction, into evidence. In terms of our present legal sufficiency exercise, the license would fortuitously have shown the appellant's residence as well. Because of the summary nature of the trial, however, the license was never offered in evidence. For purposes of the present analysis, therefore, the appellant's home address is not in the case. We must continue to look for a tiebreaker elsewhere.

Three beer cans were in evidence. The presence of a partially consumed can of beer between the appellant's legs and two other empty cans in the back seat would give rise

to a reasonable inference that the appellant's drinking spree was on the downslope rather than at an early stage. At least a partial venue of the spree, moreover, would reasonably appear to have been the automobile. One does not typically drink in the house and then carry the empties out to the car. Some significant drinking, it may be inferred, had taken place while the appellant was in the car. The appellant's state of unconsciousness, moreover, enforces that inference. One passes out on the steering wheel after one has been drinking for some time, not as one only begins to drink. It is not a reasonable hypothesis that one would leave the house, get in the car, turn on the lights, turn on the motor, and then, before putting the car in gear and driving off, consume enough alcohol to pass out on the steering wheel. Whatever had been going on (driving and drinking) would seem more likely to have been at a terminal stage than at an incipient one.

Yet another factor would have sufficed, we conclude, to break the tie between whether the appellant had not yet left home or was already abroad upon the town. Without anything further as to its contents being revealed, it was nonetheless in evidence that the thing that had brought Trooper Cottman to the scene was a complaint about a suspicious vehicle. The inference is reasonable that the vehicle had been observed driving in some sort of erratic fashion. Had the appellant simply been sitting, with his motor idling, on the driveway of his own residence, it is not likely that someone from the immediate vicinity would have found suspicious the presence of a familiar neighbor in a familiar car sitting in his own driveway. The call to the police, even without more being shown, inferentially augurs more than that. It does not prove guilt in and of itself. It simply makes one of two alternative inferences less reasonable and its alternative inference thereby more reasonable.

The totality of the circumstances are, in the last analysis, inconsistent with a *reasonable* hypothesis of innocence. They do not, of course, foreclose the hypothesis but such has never been required. They do make the hypothesis

more strained and less likely. By an inverse proportion, the diminishing force of one inference enhances the force of its alternative. It makes the drawing of the inference of guilt more than a mere flip of a coin between guilt and innocence. It makes it rational and therefore within the proper purview of the factfinder. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). We affirm.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.